# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

MYRON GIDDENS,                                Civil No. 11-616 (NLH/JS)

       Plaintiff,

  v.                                            **OPINION**

UPS SUPPLY CHAIN SOLUTIONS,

       Defendant.

---

**APPEARANCES:**
Stephen Price Norman, Esq.
Daniel Charles Herr, Esq.
The Norman Law Firm
30838 Vines Creek Road
Suite 3
Dagsboro, DE 19939

    *Counsel for Plaintiff, Myron Giddens*

Jennifer C. Bebko Jauffret, Esq.
Lori A. Brewington, Esq.
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801

    *Counsel for Defendant, UPS Supply Chain Solutions, Inc.*

**HILLMAN, District Judge:**

This matter comes before the Court by way of motion of Defendant, UPS Supply Chain Solutions, Inc., seeking summary judgment pursuant to Federal Rule of Civil Procedure 56. The

Court has reviewed the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion will be granted.

## I.     JURISDICTION

Plaintiff, Myron Giddens, brings this action against Defendant asserting claims under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Accordingly, the Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

## II.    BACKGROUND

In February 2008, Plaintiff began working at Defendant's facility in Newark, Delaware as a collection associate. (Second Am. Compl. (hereafter, "SAC") ¶ 4; Answer ¶ 4.) In July 2008, Plaintiff's employment was terminated. (SAC ¶ 12; Answer ¶ 12.) Plaintiff challenged the discharge through Defendant's internal Employee Dispute Resolution ("EDR") program. (SAC ¶ 17; Answer ¶ 17.) As a result of the EDR process, Plaintiff's employment was reinstated on or about October 2, 2008. (SAC ¶ 19; Answer ¶ 19.)

Plaintiff contends that upon his return to work, his performance came under "intense scrutiny." (SAC ¶ 20.) Plaintiff submits, for example, that his supervisor challenged

the legitimacy of the doctor's notes Plaintiff provided regarding his absences from work, even going so far as calling a dentist to confirm that Plaintiff had his wisdom teeth extracted. (Decl. of Lori A. Brewington (hereafter, "Brewington Decl."), Ex. 1 at 140:10-22.) Plaintiff also states that when he was on sick leave in August 2009, he received a letter from his superiors requiring him to return to work when the doctor had not yet authorized his return. (Id. at 145:8-18.) Plaintiff represents that other employees on medical leave did not receive the same level of scrutiny. (Id. at 150:20-151:8.) Based on the foregoing, Plaintiff filed charges of discrimination against Defendant with the Delaware Department of Labor and the Equal Employment Opportunity Commission (hereafter, "EEOC") on or about December 7, 2009. (Brewington Decl., Ex. 38.)

On Saturday, December 19, 2009, Plaintiff began to experience flu-like symptoms. (Brewington Decl., Ex. 1 at 182:4-12.) Plaintiff called out sick from work on Monday, December 21, 2009 through Thursday, December 24, 2009. (Id. at 187:24-15, 200:24-201:10, 204:2-15, 217:10-23.) He went to his doctor, Scott Harrison, D.O., on Monday, December 28, 2009. (Id. at 230:22-231:7.) Dr. Harrison diagnosed Plaintiff as having an upper respiratory infection and pharyngitis. (Brewington Decl., Ex. 6 at 21:17-20.) Dr. Harrison cleared

Plaintiff to return to work as of December 28, 2009, instructed
Plaintiff to continue taking over-the-counter fluids and
medicines, and noted that Plaintiff could come back if his
symptoms did not improve.  (Id. at 22:2-3, 23:3-15.)  Plaintiff
returned to work on December 28 or December 29, 2009.
(Brewington Decl., Ex. 1 at 239:6-9.)

Defendant asserts that Plaintiff called out on December 21,
2009 and December 22, 2009 due to weather and/or car trouble,
and did not at that time advise that he was sick.  (Brewington
Decl., Ex. 2 ¶¶ 29-30.)  On December 24, 2009, Plaintiff
purportedly advised his supervisor, Nadene Reuling, that he had
already gone to the doctor and obtained a doctor's note.
(Brewington Decl., Ex. 33.)  In the same conversation, however,
Plaintiff subsequently stated that he did not have a doctor's
appointment until December 28, 2009 and would not have a note
until after the appointment.  (Id.)  The doctor's note excused
Plaintiff for December 22, 2009 through December 25, 2009.
(Brewington Decl., Ex. 2 ¶ 39.)  The inconsistencies in the
information provided by Plaintiff caused Ms. Reuling to question
Plaintiff's integrity, and she believed that Plaintiff had lied
to her and did not have a legitimate reason for missing work the
week of December 21, 2009.  (Id. at ¶ 41.)  Ms. Reuling thus

recommended that Plaintiff's employment be terminated. (Id. at
¶ 40.)

Plaintiff's employment was subsequently terminated.
Defendant represents that the decision to fire Plaintiff was
made on December 29, 2009. (Brewington Decl., Ex. 4 ¶ 33.)
Defendant's representatives planned to notify Plaintiff of the
discharge in person on January 5, 2010. (Id. at ¶ 34.)
However, Plaintiff did return to work for more than one week, so
Defendant decided to notify Plaintiff of the termination by
mail. (Id. at ¶ 37.) By letter dated January 14, 2010,
Plaintiff was notified that his employment had been terminated.
(Brewington Decl., Ex. 39.)

III.  DISCUSSION

   A. Summary Judgment Standard

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law.'" Celotex Corp. v. Catrett, 477
U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing
Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is

"material" if, under the governing substantive law, a dispute

about the fact might affect the outcome of the suit.  Id.  "In

considering a motion for summary judgment, a district court may

not make credibility determinations or engage in any weighing of

the evidence; instead, the nonmoving party's evidence 'is to be

believed and all justifiable inferences are to be drawn in his

favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d

Cir. 2004)(citing Anderson, 477 U.S. at 255, 106 S. Ct. 2505).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. 2548 ("[A] party seeking

summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact.")(citation

omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d

186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on

the summary judgment movant to show the absence of a genuine

issue of material fact, 'the burden on the moving party may be

discharged by "showing -- that is, pointing out to the district

court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.")(citing <u>Celotex</u>, 477 U.S. at 325, 106 S. Ct. 2548).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. 2548. A "party opposing summary judgment may not rest upon the mere allegations or denials of the . . . pleading[s.]" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322, 106 S. Ct. 2548). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those

offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256–57, 106

S. Ct. 2505.

**B.   Analysis**

**1. Title VII Claim**

**a. Timeliness of Title VII Filing**

Defendant first contends that Plaintiff's claim under Title

VII, set forth in Count III of the Second Amended Complaint,

should be dismissed as time-barred.  Defendant specifically

asserts that Plaintiff did not file a complaint in this matter

within ninety days of receipt of a Notice of Right to Sue from

the EEOC (hereafter, "Notice"), as required by 42 U.S.C. §

2000e-5 and 29 C.F.R. § 1614.47(a).  (Mem. in Supp. of Def.'s

Mot. for Summ. J. (hereafter, "Def.'s Br.") 10.)  The Notice

indicates that it was mailed on April 8, 2011.  (Brewington

Decl., Ex. 40.)  Plaintiff did not recall at his deposition the

date on which he received the Notice.[1]  (Brewington Decl., Ex. 1

at 171:9-172:17.)  Defendant argues that Plaintiff is deemed to

have received the notice on April 11, 2011, three days after it

was mailed by the EEOC.  (Def.'s Br. 11.)  Consequently,

Defendant submits, Plaintiff was required to file suit within

---

[1] The Notice contains a date stamp of April 11, 2011.
(Brewington Decl., Ex. 40.)  Defendant asserts that the date
stamp is the date on which Plaintiff's counsel received the
Notice, but the stamp does not indicate who received the Notice
and is not sufficient evidence to demonstrate that Plaintiff
received the notice on April 11, 2011.  (Def.'s Br. 11.)

ninety days of April 11, 2011, which would have been July 10, 2011.  (Id.)  Because July 10, 2011 was a Sunday, Defendant states that Plaintiff had one extra day, until July 11, 2011, to file suit.  (Id.)

Plaintiff did not file a complaint in this matter until July 12, 2011.  (See Compl.)  Defendant argues that Plaintiff's attempt to file suit one day after the expiration of his ninety-day window warrants dismissal of the Title VII claim.  (Def.'s Br. 11.)  Plaintiff does not dispute that he filed this lawsuit one day late.  (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ J. (hereafter, "Pl.'s Br.") 7.)  Rather, Plaintiff notes that Defendant did not assert a timeliness issue in connection with a prior motion to dismiss and a motion to amend in this case, and in failing to assert timeliness as a defense in the past two and a half years has waived its right seek dismissal on timeliness grounds at this time.  (Id.)  Plaintiff also notes that at the time the complaint was filed, he was represented by counsel who was subsequently suspended from the practice of law.  (Id.)  In reply, Defendant argues that it was appropriate to wait until the summary judgment stage to seek dismissal on timeliness grounds, because discovery was needed to determine the date on which Plaintiff or his attorney received the Notice.  (Reply

Mem. in Supp. of Def.'s Mot. for Summ. J. (hereafter, "Def.'s Reply Br.") 2.)

42 U.S.C. § 2000e-5(f)(1) provides that if the EEOC takes no action on a complaint within a specified period of time, the agency "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought. . . ."  42 U.S.C. § 2000e-5(f)(1).  The time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which occurs on the date he or his attorney receives a right-to-sue letter from the agency, whichever is earlier.  Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 and n.1 (3d Cir. 1999) (citations omitted).

The ninety-day filing requirement has been treated by the courts as a statute of limitations rather than a jurisdictional prerequisite to suit.  Id. at 239-40.  Thus, failure to meet the ninety-day filing deadline may be raised as an affirmative defense.  See Fed. R. Civ. P. 8(c)(1).  While "'parties should generally assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved' . . . there is no hard and fast rule limiting defendants' ability to plead the statute of limitations."  Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 506 (3d Cir. 2006) (internal quotation omitted).  "Accordingly, affirmative defenses can be raised by motion, at any time (even

after trial), if plaintiffs suffer no prejudice." Id. (citation omitted).

Here, Defendant's Answer to the Second Amended Complaint does not assert an affirmative defense based on Plaintiff's failure to institute litigation with the ninety day window provided under Title VII. (See Answer 14.)[2] Furthermore, Plaintiff contends -- and Defendant does not dispute -- that a timeliness issue was not raised in connection with prior motion practice. Defendant argues that it nonetheless raised the issue when it specifically denied in its Answer Plaintiff's allegation that suit was filed within ninety days of receipt of the EEOC Notice. (Def.'s Reply Br. 2; see also Answer ¶¶ 8-9.)

The Court agrees with Defendant that the Answer provided Plaintiff with sufficient notice that a contested issue in this case would be whether Plaintiff timely filed the complaint. Plaintiff alleged in the Second Amended Complaint that "[t]his action is brought within ninety (90) days of receipt of the Right to Sue Letter by Plaintiff." (SAC ¶ 9.) Defendant specifically denied Plaintiff's allegation, thereby placing Plaintiff on notice that the timeliness of his filing was a fact

---

[2] Moreover, although the Answer contains a "Reservation of Rights" whereby Defendant "expressly reserv[ed] the right to amend this Answer to assert any and all" defenses that may have become apparent during discovery, Defendant never moved to amend its Answer. (See Answer 14.)

in dispute. (Answer ¶ 9.) Furthermore, Plaintiff does not argue that he has suffered prejudice as a result of Defendant's failure to raise the timeliness issue earlier in the litigation. The Court thus concludes that Defendant did not waive its right to challenge the timeliness of this lawsuit.

The Court turns, then, to the issue of whether Plaintiff's Title VII claims are barred because Plaintiff did not file a complaint within ninety days of receipt of the Notice. As noted supra, Plaintiff does not dispute that he failed to timely file suit pursuant to 42 U.S.C. § 2000e-5(f)(1), but notes that at the time he was represented by an attorney who was later disciplined and suspended from the practice of law. (Pl.'s Br. 7.) The ninety-day period for filing a Title VII claim may be tolled if a plaintiff has been "prevented from filing in a timely manner due to sufficiently inequitable circumstances[,]" which may include, inter alia, gross attorney error. Seitzinger, 165 F.3d at 240-41 (citations omitted). However, "[t]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect' by an attorney." Id. at 241 (quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)).

In a prior Order in this case, Magistrate Judge Schneider noted that Plaintiff's former counsel, Ronald G. Poliquin,

Esquire, was suspended in August 2012 by the Delaware Supreme
Court for six months and one day due to performance deficiencies
and a lack of candor with the court in unrelated cases. (Order
3, Jan. 31, 2013) (citing In re Poliquin, 49 A.3d 1115, 1120-
1122, 1146 (Del. 2012)). This Court has reviewed the Report and
Recommendation of Sanction issued by the Delaware Board of
Professional Responsibility. According to the Report and
Recommendation, counsel's performance deficiencies were
initially caused because he had attention deficit disorder, but
the issues were then compounded by an addiction to medication,
including Adderall and Benz, that had been prescribed to address
his medical condition. In re Poliquin, 49 A.3d at 1129, 1136.
Counsel recognized his drug dependency in or about March 2011,
and he entered a drug rehabilitation program in Texas from late
May 2011 to approximately June 27, 2011. Id.

    The Court finds that the circumstances presented here
warrant tolling of the ninety-day statutory period for filing
suit under Title VII. This is not a case of "garden variety"
excusable neglect by counsel. Rather, Plaintiff's counsel was
coping with a chemical dependency severe enough to require
treatment at an in-patient rehabilitation facility. Counsel
received such treatment from May 2011 through June 2011, which
time period directly coincides with the ninety-day statutory
time period -- April 11, 2011 through July 11, 2011 -- for

13

filing suit in this case.  Plaintiff should not be penalized by
dismissal of his Title VII claim on timeliness grounds solely
because his counsel of record was coping with a serious drug
addiction, particularly where Defendant asserts no prejudice as
a result of the one-day delay.  The Court will therefore accept
as timely Plaintiff's Title VII claim as set forth in the
complaint filed on July 12, 2011.

### b. Merits of Title VII Retaliation Claim

Defendant argues that Plaintiff cannot establish a <u>prima
facie</u> case of retaliation under Title VII, specifically the
requisite causal connection between Plaintiff's protected
activity and the adverse employment action taken against him.

Pursuant to Title VII,

> It shall be an unlawful employment practice
> for an employer to discriminate against any
> of his employees . . . because he has
> opposed any practice made an unlawful
> employment practice by this subchapter, or
> because he has made a charge, testified,
> assisted, or participated in any manner in
> an investigation, proceeding, or hearing
> under this subchapter.

42 U.S.C. § 2000e-3(a).  "To establish a prima facie case of
retaliation under Title VII, a plaintiff must tender evidence
that: '(1) she engaged in activity protected by Title VII; (2)
the employer took an adverse employment action against her; and
(3) there was a causal connection between her participation in
the protected activity and the adverse employment action.'"

Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir.
2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.
1995)).

> If the employee establishes this *prima facie*
> case of retaliation, the familiar *McDonnell*
> *Douglas* approach applies in which "the
> burden shifts to the employer to advance a
> legitimate, non-retaliatory reason" for its
> conduct and, if it does so, "the plaintiff
> must be able to convince the factfinder both
> that the employer's proffered explanation
> was false, and that retaliation was the real
> reason for the adverse employment action.

Id. at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494,
500-01 (3d Cir. 1997)).  "To survive a motion for summary
judgment in the employer's favor, a plaintiff must produce some
evidence from which a jury could reasonably reach these
conclusions."  Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764
(3d Cir. 1994)).

Here, the first two factors are satisfied.  The parties do
not dispute that Plaintiff engaged in an activity protected by
Title VII, that is, the filing of an EEO complaint grieving
about discrimination.  Nor do the parties dispute that Plaintiff
suffered a materially adverse employment action when Plaintiff
was terminated from his job.

Instead, Defendant challenges the existence of any causal
connection between that protected activity and the adverse
employment action.  Specifically, Defendant submits that its

decisionmakers had no knowledge that Plaintiff filed an EEO
complaint when they decided to terminate his employment.
Plaintiff, in turn, relies on the temporal proximity between the
filing of the EEO complaint and his termination to infer a
causal connection, arguing that only two weeks ensued between
Defendant's purported receipt of the EEO complaint and the
adverse employment action.  (Pl.'s Br. 9.)

"[T]he mere fact that adverse employment action occurs
after a complaint will ordinarily be insufficient to satisfy the
plaintiff's burden of demonstrating a causal link between the
two events."  Krouse, 126 F.3d at 503 (quoting Robinson v. City
of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  When the
timing of an adverse employment action is "'unusually
suggestive'" of retaliatory motive, then a causal link may be
inferred.  Id. (quoting Robinson, 120 F.3d at 1302).  However,
"[k]nowledge of an employee's protected conduct is an essential
element of establishing a causal connection."  Warfield v.
SEPTA, 460 F. App'x 127, 131 (3d Cir. 2012).

The Court finds that Plaintiff fails to make a prima facie
case because he does not sufficiently establish causality.  The
Charge of Discrimination filed with the Delaware Department of
Labor is dated December 7, 2009.  (Brewington Decl., Ex. 38.)
The Delaware Department of Labor sent the Notice of Charge of
Discrimination to Defendant by letter dated December 29, 2009.

16

(Id.)[3]  Plaintiff received notice that his employment was
terminated approximately two weeks later, by letter dated
January 14, 2010.  (Brewington Decl., Ex. 39.)  As set forth
below, the undisputed evidence of record demonstrates that
Defendant made a decision to terminate Plaintiff's employment on
December 29, 2009.  Moreover, the record is devoid of evidence
that those who decided to terminate his employment had any
knowledge, at the time such decision was made, that Plaintiff
filed an EEO complaint.

Defendant has provided the affidavits of three individuals
-- Nadene Reuling, Reba Alexander Businsky, and Brian Katz --
who were involved in the decision to terminate Plaintiff's
employment.  Each of these individuals affirms that the final
approval to terminate Plaintiff's employment was given on
December 29, 2009.  Each of these individuals also affirms that

---

[3] Plaintiff argues that the letter is evidence that Defendant
knew of the EEO complaint on December 29, 2009.  (Pl.'s Br. 8-
9.)  The letter from the Delaware Department of Labor is dated
December 29, 2009 and indicates that it was sent to Defendant
via certified mail.  The letter does not indicate that a copy
was hand-delivered or sent via email on the same date, nor does
Plaintiff point to any other evidence to support the claim that
Defendant knew of the EEO complaint on or before December 29,
2009.  The Court finds that the letter itself is insufficient
evidence to establish that Defendant had knowledge of the EEO
complaint on the same day that the letter was mailed.  Cf. Fed.
R. Civ. P. 6(d) (when service made by mail, three days added
after period would otherwise expire).

they did not have knowledge of Plaintiff's EEO complaint at the time the decision to terminate Plaintiff's employment was made.

Ms. Reuling was Plaintiff's immediate supervisor and worked as an Accounts Receivable Supervisor in Defendant's Order to Cash Department at the time Plaintiff was employed by Defendant. (Brewington Decl., Ex. 2 ¶ 3.) Ms. Reuling states that she recommended termination of Plaintiff's employment on December 23, 2009. (Id. at ¶ 32.) According to Ms. Reuling, her recommendation was based on Plaintiff's failure to report to work from December 21, 2009 through December 23, 2009, his inconsistent reasons for his absence, and his receipt of prior written warnings for attendance. (Id.) Defendant also submitted an email from Ms. Reuling to her superior, Ms. Businsky, dated December 23, 2009, advising that Plaintiff was late for three consecutive days and noting that his employment could be terminated immediately under company policy. (Brewington Decl., Ex. 32.)

Ms. Businsky was a Human Resources Supervisor for Defendant at the time Plaintiff was Defendant's employee. (Brewington Decl., Ex. 3 ¶ 3.) Ms. Businsky states that she agreed with Ms. Reuling's recommendation of December 23, 2009 and therefore sent on the same date a request to her supervisor, Brian Katz, to terminate Plaintiff's employment. (Id. at ¶ 30; Ex. 32.) Mr. Katz was the Area Human Resources Manager for Defendant at the

time Plaintiff was employed by Defendant. (Brewington Decl., Ex. 4 ¶ 3.) In responding to Ms. Businsky's email of December 23, 2009, Mr. Katz advised that a decision on Plaintiff's employment should not be made until Plaintiff had an opportunity to explain his absences. (Brewington Decl., Ex. 32.) The following day, December 24, 2009, Plaintiff provided, in Ms. Reuling's estimation, inconsistent and suspect information that caused her to believe he had not been sick and had no legitimate reason for missing work. (Brewington Decl., Ex. 2 ¶¶ 40, 41.) Ms. Reuling and Ms. Businsky thus renewed their request to terminate Plaintiff's employment, and Mr. Katz represents that he gave final approval for such action on December 29, 2009. (Brewington Decl., Ex. 4 ¶¶ 31-33.) Mr. Katz further represents that at that time, he was not aware that Plaintiff had filed a Charge of Discrimination. (Id. at ¶ 33.) Ms. Reuling and Ms. Businsky similarly state that they did not become aware that Plaintiff had filed a Charge of Discrimination until after a final decision to terminate Plaintiff's employment was made. (Brewington Decl., Ex. 2 ¶ 49, Ex. 3 ¶ 43.)

The foregoing undisputed evidence demonstrates that Plaintiff's superiors made a decision to terminate Plaintiff's employment on December 29, 2009. On the same date, the Delaware Department of Labor sent Plaintiff's Charge of Discrimination to Defendant. There is no evidence in the record that Defendant

received a copy of the letter on the day it was sent or otherwise had notice that Plaintiff had filed an EEO complaint. Because Plaintiff does not point to any evidence that the decisionmakers were aware of his EEO filing when they decided to terminate his employment, there could be no causal link between the filing of the EEO complaint and the decision to terminate Plaintiff's employment.  Plaintiff thus fails to make a <u>prima facie</u> case of Title VII retaliation.[4]  <u>See</u> <u>Dooley v. Roche Lab Inc.</u>, 275 F. App'x 162, 165 (3d Cir. 2008) (plaintiff "fails to make a prima facie case because she does not point to any evidence that the *decisionmakers* in those instances were aware of her internal complaints (and thus that there could be a causal link between the complaints and those decisions).") (emphasis in original); <u>Warfield</u>, 460 F. App'x at 131 ("SEPTA

_____

[4] In so finding, the Court notes Plaintiff's representation that he was instructed by Ms. Reuling on January 6, 2010 to apply for short-term disability.  (Pl.'s Br. 6.)  Through this statement, Plaintiff seemingly implies that a decision to terminate his employment must not have been made until after January 6, 2010. Plaintiff, however, does not provide the cited pages of his deposition transcript with respect to the issue, and accordingly there is no evidence in the record to support Plaintiff's contention.  Moreover, even assuming Ms. Reuling did so advise Plaintiff on January 6, 2010, her advice is not sufficient to create a genuine issue of fact as to the date on which a final decision was made to terminate Plaintiff's employment, particularly in light of Mr. Katz's sworn statement that he gave such approval on December 29, 2009, and Ms. Reuling's and Ms. Businsky's sworn statements that they received approval from Mr. Katz on December 29, 2009.

decided to terminate [plaintiff] before it was aware that she had filed a complaint with the [Pennsylvania Human Relations Commission]. There is no evidence of a causal connection between the complaint and her termination. [Plaintiff] thus has failed to offer evidence establishing a *prima facie* case of retaliation.").[5]

Furthermore, even if Plaintiff had met his burden of establishing a prima facie case of retaliation, he fails to meet his burden of proving that retaliation was the real reason for his termination. The Court notes that Defendant submits various instances of performance deficiencies, absenteeism, tardiness and other conduct by Plaintiff which purportedly served as non-retaliatory reasons for terminating Plaintiff's employment.[6]

---

[5] In the Second Amended Complaint, Plaintiff alleged an alternative ground for his Title VII claim, namely, that he engaged in protected activity when he called the UPS Help Line on September 9, 2009 to report the retaliatory and harassing conduct of his superiors. (SAC ¶ 133.) By contrast, Plaintiff notes in the motion papers that "[t]he events leading to Plaintiff's termination occurred in December 2009 and January 2010." (Pl.'s Br. 3.) As Plaintiff fails to present any evidence to support the allegation that events in September 2009 led to his termination, the Court shall grant summary judgment in favor of Defendant to the extent Plaintiff's Title VII claim is predicated on retaliation for calling the Help Line.

[6] The Court makes no finding as to whether the evidence submitted by Defendant is sufficient to meet its burden at the summary judgment stage that it had a legitimate, non-retaliatory reason for terminating Plaintiff's employment. The Court notes only that even if Defendant met such burden, Plaintiff fails to then satisfy its burden under McDonnell Douglas to demonstrate pretext.

Under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), Plaintiff bears the burden of showing that such reasons proffered by Defendant are mere pretext.  Rather than attempt to satisfy its burden, Plaintiff dismisses the incidents as "irrelevant" and an attempt to "muddy the waters" by discussing "past acts of alleged dishonesty and Defendant's criminal background."  (Pl.'s Br. 13-14.)  In so doing, Plaintiff fails to create a genuine issue as to whether Defendant's proffered reasons for termination were pretextual.

For these reasons, Defendant's motion for summary judgment as to Count III will be granted.

### 2. FMLA Claims

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, <u>et seq.</u>, was enacted to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide.  <u>Victorelli v. Shadyside Hosp.</u>, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101).  The FMLA is both intended and expected to benefit employers as well as their employees in order to balance the demands of the workplace with the needs of families. 29 C.F.R. § 825.101(b), (c).

The FMLA affords eligible employees "a total of 12 workweeks of leave during any 12-month period" because of "a serious health condition that makes the employee unable to

perform the functions of the position of such employee." 29
U.S.C. § 2612(a)(1)(D). Following FMLA leave, an employee is
entitled to be reinstated to the former position or an alternate
one with equivalent pay, benefits and working conditions. 29
U.S.C. § 2614(a)(1). The FMLA provides relief for interference
with these FMLA rights as well as for retaliation for exercising
these FMLA rights.

In this case, Plaintiff first contends that Defendant
interfered with his rights under the FMLA when it terminated him
rather than allowing him to take sick leave in December 2009.
Plaintiff also contends that Defendant violated the FMLA by
terminating his employment in retaliation for taking sick leave.

The FMLA declares it "unlawful for any employer to
interfere with, restrain, or deny the exercise of or the attempt
to exercise, any right provided" in the FMLA. 29 U.S.C. §
2615(a)(1). Such a claim is typically referred to as an
"interference" claim. Sommer v. The Vanguard Group, 461 F.3d
397, 398–99 (3d Cir. 2006). To assert an interference claim,
"the employee only needs to show that he was entitled to
benefits under the FMLA and that he was denied them." Id. at
399 (citation omitted). "An interference action is not about
discrimination, it is only about whether the employer provided
the employee with the entitlements guaranteed by the FMLA." Id.
(citation omitted). In contrast, the "retaliation theory

23

protects employees from suffering discrimination because they have exercised their rights under the FMLA." Santosuosso v. Novacare Rehab., 462 F. Supp. 2d 590, 596 (D.N.J. 2006) (internal citation and quotes omitted).

As an initial matter, before availing himself of the benefits of the FMLA, Plaintiff bears the burden of demonstrating that he had a "serious health condition" that rendered him unable to perform the functions of his job.  29 U.S.C. § 2612(a)(1)(D); see also Rankin v. Seagate Tech., Inc., 246 F.3d 1145, 1147 (8th Cir. 2001)("Where absences are not attributable to a 'serious health condition,' however, FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences.").  The Court, in an Opinion dated June 27, 2012, previously addressed what constitutes a "serious health condition" under the FMLA.  As noted in the Opinion, pursuant to the FMLA, a "'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."  29 CFR § 825.113(a).

Plaintiff does not contend that he can satisfy the "inpatient care" prong of the definition of "serious medical condition."  Thus, the Court considers only the "continuing

24

treatment" prong in more detail. Under the "continuing treatment" prong, Plaintiff must prove (1) that he had a "period of incapacity" relating to the medical condition, (2) that the "period of incapacity" lasted more than "three consecutive, full calendar days;" and (3) that he received "subsequent treatment" by a health care provider two or more times within thirty days of the first day of incapacity, or received treatment by a health care provider on at least one occasion which resulted in a regimen of continuing treatment under the supervision of the health care provider. 29 C.F.R. § 825.115(a)(1)-(2). The first in-person visit must take place within seven days of the first day of incapacity. 29 CFR § 825.115(a)(3).

In his initial complaint, Plaintiff averred that he suffered from the flu,[7] but he did not allege any complications due to the flu nor did he assert facts in support of continuing treatment pursuant to 29 CFR § 825.115. (Op. 14-15, June 27,

---

[7] The FMLA clarifies that "[o]rdinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 CFR § 825.113(d) (emphasis added). However, absences due to the common cold or flu may be protected under the FMLA when the standard set forth in the regulation is met. Rankin, 246 F.3d at 1147 (internal quotation omitted). Plaintiff's physician never diagnosed him as having the flu; Plaintiff was diagnosed as having an upper respiratory infection and pharyngitis. (Brewington Decl., Ex. 6 at 35:1-13.)

2012.)  Plaintiff's FMLA claims were thus dismissed without prejudice, with the right to file an amended complaint.  (Id. at 15-16.)  Subsequently, Plaintiff sought leave to file a second amended complaint,[8] and Magistrate Judge Schneider granted the motion, finding that Plaintiff's factual allegations were sufficient to show that Plaintiff's absences may be covered by the FMLA.  (Order 12, Jan. 31, 2013.)  In so finding, the Magistrate Judge noted Plaintiff's allegations that he was incapacitated for over three consecutive days, that he visited a health care provider within seven days of incapacitation, and that he visited his doctor for a second time on January 13, 2010 because his alleged incapacitation continued.  (Id.)

Although Plaintiff may have averred sufficient allegations to survive dismissal of the Second Amended Complaint, he must at this time adduce sufficient evidence to generate a genuine issue of material fact to avoid summary judgment.  Plaintiff's own deposition testimony, however, is fatal to his FMLA claims in this case.  In the Second Amended Complaint, Plaintiff avers that he experienced flu-like symptoms on Monday, December 22,

---

[8] Plaintiff filed an amended complaint on July 18, 2012, but new counsel was thereafter substituted because Plaintiff's original counsel was suspended from the practice of law as discussed supra.  Plaintiff's new counsel sought leave to file a second amended complaint because he determined that the amended complaint filed by predecessor counsel suffered from the same deficiencies as the initial complaint.  (Order 3-4, Jan. 31, 2013.)

2009.  (SAC ¶ 46.)  Plaintiff does not allege that he experienced symptoms prior to this date.  By contrast, at his deposition, Plaintiff testified that he had flu-like symptoms at least as early as Saturday, December 19, 2009.  (Brewington Decl., Ex. 1 at 183:4-8.)  Such symptoms, according to Plaintiff, continued on Sunday, December 20, 2009 through Thursday, December 24, 2009.  (Id. at 186:14-188:6, 203:15-21, 218:4-8.)  On either December 21, 2009 or December 22, 2009, Plaintiff contacted the office of his physician, Scott Harrison, D.O., and scheduled the first available appointment which was on December 28, 2009.  (Id. at 189:4-20, 193:10-22, 208:14-18.) Plaintiff was examined by Dr. Harrison on December 28, 2009. (Id. at 241:20-25.)

Given these facts, Plaintiff did not visit a health care provider for the flu within seven days as required by 29 C.F.R. § 825.115(a)(3).  His testimony establishes that he first experienced flu-like symptoms as early as December 19, 2009 but did not obtain treatment from a health care provider until

December 28, 2009, nine days later.[9]  Consequently, Plaintiff

fails to meet the regulatory requirements sufficient to

demonstrate that he experienced a "serious medical condition"

warranting the protections of the FMLA.

Furthermore, Plaintiff fails to meet the FMLA requirement

that he was under a "regimen of continuing medical treatment"

for a "serious health condition."  Plaintiff's physician, Dr.

Harrison, testified that on December 28, 2009, he merely advised

Plaintiff to continue taking the over-the-counter medicine that

he was already taking.  (Brewington Decl., Ex. 6 at 22:24-23:7.)

---

[9] The Court notes Plaintiff's representation that because of the
holiday season, the first available appointment was Monday,
December 28, 2009.  However, no party addresses whether these
circumstances warrant an extension of the seven-day requirement,
or whether the Court even has the authority to extend the seven-
day requirement.

29 C.F.R. § 825.115(a)(1) provides that a party must see a
health care provider "two or more times, within 30 days of the
first day of incapacity, unless extenuating circumstances
exist," and extenuating circumstances are defined in Subsection
(a)(5) as "circumstances beyond the employee's control that
prevent the follow-up visit from occurring as planned by the
health care provider[.]"  29 C.F.R. § 825.115(a)(1), (a)(5).
The regulation provides as an example: "extenuating
circumstances exist if a health care provider determines that a
second in-person visit is needed within the 30-day period, but
the health care provider does not have any available
appointments during that time period."  29 C.F.R. §
825.115(a)(5).  Thus, while the plain language of the regulation
provides for an extension of the thirty day requirement when the
"follow-up visit" cannot be scheduled within thirty days, the
regulation provides no leeway for the initial visit due to a
health care provider's schedule.  The initial visit must occur
within seven days of incapacity.

Dr. Harrison also testified that he did not require Plaintiff to return for a follow-up visit, but Plaintiff could return if he did not get better.  (Id. at 23:11-15.)  These facts are insufficient to demonstrate that Plaintiff's visit to Dr. Harrison on December 28, 2009 resulted in a "regimen of continuing treatment" for purposes of the FMLA.  FMLA regulations clearly state that "the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave."  29 C.F.R. § 825.113(c).

Because his single visit to Dr. Harrison on December 28, 2009 did not satisfy the requirement of "continuing treatment" under 29 C.F.R. § 825.115(a)(2), Plaintiff must have received "subsequent treatment" by a health care provider two or more times within thirty days of the first day of incapacity.  29 C.F.R. § 825.115(a)(1).  The Court assumes for purposes of this analysis that Plaintiff's first visit to Dr. Harrison occurred in the first seven days of incapacity, notwithstanding its finding to the contrary discussed above.  Plaintiff saw Dr. Harrison again on January 13, 2010, which is within thirty days of the first day of incapacity of December 19, 2009.  However,

this subsequent treatment was not within the same period of incapacity for which Plaintiff was unable to work in December 2009.

The Tenth Circuit, in <u>Jones v. Denver Public Schools</u>, held that where a plaintiff attempts to avail himself of the benefits of the FMLA, the "[t]reatment two or more times" requirement described in 29 C.F.R. § 825.115(a)(1) must take place during the "period of incapacity." <u>Jones v. Denver Pub. Sch.</u>, 427 F.3d 1315, 1323 (10th Cir. 2005). In <u>Jones</u>, the plaintiff fell and aggravated a pre-existing back injury. <u>Id.</u> at 1317-18. He visited a doctor who cleared him for work for one week due to a "wrenched back." <u>Id.</u> The plaintiff then missed two days the following week due to the flu, and his employment was terminated upon his return to work. <u>Id.</u> at 1318. Approximately two weeks later, the plaintiff returned to the doctor for a follow-up visit concerning his back. <u>Id.</u> The Tenth Circuit concluded that the period of incapacity only involved a single treatment. <u>Id.</u> at 1323. In so finding, the Tenth Circuit noted that "to allow an indefinite timeframe for the second doctor's visit would invite strategic behavior by plaintiffs, who could schedule a second visit to 'determine if a serious health condition exists' long after all symptoms have subsided, solely

to bolster their claim of entitlement to FMLA leave in anticipation of litigation." Id. at 1322-23.

Here, Plaintiff visited Dr. Harrison on December 28, 2009, at which time Dr. Harrison cleared Plaintiff to return to work with no restrictions. (Brewington Decl., Ex. 7.) Dr. Harrison testified that there was no reason that Plaintiff could not have returned to work at that time. Thus, the period of incapacity had ended as of December 28, 2009, at which time Plaintiff had only seen a doctor one time. As in Jones, a decision to terminate Plaintiff's employment was then made on December 29, 2009, before Plaintiff had visited a doctor a second time. Although a decision had already been made, which at the time was proper, Plaintiff subsequently visited his physician, which according to Plaintiff made Defendant's decision unlawful retroactively under 29 C.F.R. § 825.115(a)(1). Plaintiff's argument is akin to that made by the plaintiff in Jones, and this Court rejects the argument for the same reasons set forth in Jones. Accordingly, Plaintiff was not entitled to FMLA leave

and cannot make out a claim for FMLA interference or retaliation.

Defendant shall therefore be granted summary judgment on Plaintiff's FMLA interference and retaliation[10] claims, as set forth in Counts I and II of the Second Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment shall be granted.

An Order shall be entered consistent with this Opinion.

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

Dated: September 30, 2014

At Camden, New Jersey

---

[10] Summary judgment as to Plaintiff's FMLA retaliation claim may also be granted in favor of Defendant for the same reason that the Title VII retaliation claim fails.  FMLA retaliation claims are decided pursuant to the McDonnell Douglas test articulated supra.  Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 324 (3d Cir. 2014).  Plaintiff must therefore address whether the purportedly legitimate, non-retaliatory reasons for his termination proffered by Defendant are pretextual.  Plaintiff does not address the issue of pretext in connection with Defendant's asserted legitimate, non-retaliatory reasons for terminating Plaintiff's employment.